IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JJCO, INC., dba JACKSON ISUZU, a Hawaii corporation, | ) ) ) | CIVIL NO. 08-00419 SOM/LEK |
| Plaintiff, | ) ) | ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY |
| vs. | ) ) | JUDGMENT |
| ISUZU MOTORS AMERICA, INC., a Michigan corporation; JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10; DOE GOVERNMENTAL AGENCIES1-10; DOE PARTNERSHIPS 1-10; DOE ENTITIES 1-10, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

I.       INTRODUCTION.

This diversity action arises out of alleged violations of Hawaii franchise investment, motor vehicle, and contract law. JJCO Inc., a Hawaii corporation, was a licensed dealer of Isuzu vehicles from September 1998 to June 2008.  In January 2008, Defendant Isuzu Motors America, Inc. ("Isuzu") decided to discontinue distributing new vehicles in certain areas, including Hawaii, given the drop in demand.  It offered to let current Isuzu dealers continue as service dealerships.  JJCO declined this offer and demanded that Isuzu purchase all of JJCO's inventory, supplies, equipment, and furnishings at fair market value, citing Hawaii law requiring this of a franchisor that

terminates a franchise agreement.  When negotiations between the parties broke down, JJCO brought suit against Isuzu in state court on August 29, 2008.  Isuzu, a Michigan corporation, removed the action to federal court on the basis of diversity jurisdiction.  JJCO now moves for partial summary judgment on Count I, which alleges a violation of the Hawaii Franchise Investment Law, as to liability issues only.  Because JJCO has not demonstrated as a matter of law that it was a franchise within the meaning of the statute, summary judgment is DENIED.

II.      <u>BACKGROUND FACTS.</u>

On September 8, 1998, JJCO entered into a Dealer Sales and Service Agreement with Isuzu.  Jackson Decl. ¶ 5, March 3, 2009.  This Agreement provided that Isuzu would act as a distributor of motor vehicles and that JJCO would be its licensed dealer in Hawaii.  On September 27, 2000, JJCO entered into a second Agreement, granting JJCO the right to identify itself as an Isuzu dealer and to use and display Isuzu's trademarks.  <u>Id.</u> ¶ 6.  The second Agreement was renewed several times, through June 2008.  <u>Id.</u> ¶¶ 7-9.

The second Agreement required JJCO to maintain adequate inventory, and JJCO regularly bought vehicles and parts from Isuzu.  Pl.'s Ex. 1, "Isuzu Dealer Sales and Service Agreement," at 7.  JJCO was further required to purchase service equipment and tools from Isuzu.  <u>Id.</u> at 11.  JJCO was required to pay for its employees to attend Isuzu's training programs, compensating

its employees at its own cost and paying for their travel and lodging.  Id. at 9.  In addition, JJCO was required to pay its share of Isuzu's advertising expenses, id. at 12, and purchase signs from Isuzu to display.  Def's Ex. 1, "Dealership Standards Addendum," at 1.  JJCO was also required to maintain flooring arrangements, otherwise known as wholesale financing, with an approved bank in compliance with Isuzu's standards, for the exclusive purchase of Isuzu vehicles.  Id.

Isuzu billed JJCO for several services throughout the course of the business relationship.  These services included the "DLR Support System," "DLR Support Services," "Parts-AIPDN," "ADP Service Pricing," and "Service Support."  Pl.'s Exs. 5, 6. These were part of an online communication system that JJCO was required to use to receive information about vehicle warranties, parts orders, repairs, and sales.  Pl.'s Ex. 1, "Dealership Standards Addendum," at 2.  ADP Service Pricing was one option that JJCO selected to satisfy this requirement.  Jackson Decl. ¶ 9, April 21, 2009.  JJCO also paid for Isuzu service manuals. Pl.'s Ex 7.

JJCO contends that several of these expenses constitute franchise fees within the meaning of the Hawaii Franchise Law, and that JJCO is therefore a franchise protected by that law. Isuzu counters that, because these fees were merely normal business expenses, not franchise fees, the Hawaii Franchise Law does not apply.  Isuzu further maintains that JJCO voluntarily

3

terminated the business relationship, and therefore Isuzu is not liable for the purchase of JJCO's inventory at the termination of the Agreement.

III.     <u>STANDARD.</u>

Summary judgment shall be granted when

the pleadings, the discovery and disclosure
materials on file, and any affidavits show that
there is no genuine issue as to any material fact
and that the movant is entitled to judgment as a
matter of law.

Fed. R. Civ. P. 56(c); <u>see also</u> <u>Miller v. Glenn Miller Prods.,</u> <u>Inc.</u>, 454 F.3d 975, 987 (9th Cir. 2006); <u>Porter v. Cal. Dep't of</u> <u>Corr.</u>, 419 F.3d 885, 891 (9th Cir. 2005).  One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses.  <u>Celotex Corp. v.</u> <u>Catrett</u>, 477 U.S. 317, 323-24 (1986).  Accordingly, "[o]nly admissible evidence may be considered in deciding a motion for summary judgment."  <u>Miller</u>, 454 F.3d at 988.

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  <u>See</u> <u>id.</u> at 323.  A moving party has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.  <u>Nissan Fire &</u> <u>Marine Ins. Co. v. Fritz Cos.</u>, 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden initially falls on the moving party to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of

material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323); accord Miller, 454 F.3d at 987.  "A fact is material if it could affect the outcome of the suit under the governing substantive law."  Miller, 454 F.3d at 987.

When the moving party bears the burden of proof at trial, the moving party carries its initial burden on a motion for summary judgment when it "come[s] forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case."  Id. (quoting C.A.R. Trans. Brokerage Co. v. Darden Rest., 213 F.3d 474, 480 (9th Cir. 2000)).

When the moving party fails to carry its initial burden of production, "the nonmoving party has no obligation to produce anything.  In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything."  Nissan Fire, 210 F.3d at 1102-03.  On the other hand, when the moving party meets its initial burden on a summary judgment motion, the "burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial."  Miller, 454 F.3d at 987.  This means that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio

Corp., 475 U.S. 574, 586 (1986) (footnote omitted).  The
nonmoving party may not rely on the mere allegations in the
pleadings and instead "must set forth specific facts showing that
there is a genuine issue for trial."  Porter, 419 F.3d at 891
(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256
(1986)).  "A genuine dispute arises if the evidence is such that
a reasonable jury could return a verdict for the nonmoving
party." California v. Campbell, 319 F.3d 1161, 1166 (9th Cir.
2003); accord Miller, 454 F.3d at 987; Addisu v. Fred Meyer,
Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).

When "direct evidence" produced by the moving party
conflicts with "direct evidence" produced by the party opposing
summary judgment, "the judge must assume the truth of the
evidence set forth by the nonmoving party with respect to that
fact." T.W. Elec. Serv., 809 F.2d at 631.  In other words,
evidence and inferences must be construed in the light most
favorable to the nonmoving party.  Miller, 454 F.3d at 987;
Porter, 419 F.3d at 891.  This means that, even if facts are
undisputed, when "divergent ultimate inferences may reasonably be
drawn from the undisputed facts, summary judgment is improper."
Miller, 454 F.3d at 988.  The court does not make credibility
determinations or weigh conflicting evidence at the summary
judgment stage.  Id.  However, inferences may be drawn from
underlying facts not in dispute, as well as from disputed facts

that the judge is required to resolve in favor of the nonmoving party.  T.W. Elec. Serv., 809 F.2d at 631.

IV.      ANALYSIS.

JJCO contends that Isuzu terminated its franchise agreement and is therefore required by state law to purchase all of JJCO's remaining inventory.  JJCO relies on the Hawaii Franchise Investment Law, which provides in relevant part:

> Upon termination or refusal to renew the franchise the franchisee shall be compensated for the fair market value, at the time of the termination or expiration of the franchise, of the franchisee's inventory, supplies, equipment and furnishings purchased from the franchisor or a supplier designated by the franchisor. . . .

Haw. Rev. Stat. § 482E-6(3).

> Hawaii defines a "franchise" as follows:

> an oral or written contract or agreement, either expressed or implied, in which a person grants to another person, a license to use a trade name, service mark, trademark, logotype or related characteristic in which there is a community interest in the business of offering, selling, or distributing goods or services at wholesale or retail, leasing, or otherwise, and in which the franchisee is required to pay, directly or indirectly, a franchise fee.

Haw. Rev. Stat. § 482E-2.

Before this court can consider whether any franchise was terminated, the court must determine if there was any franchise at all.  It is clear that JJCO and Isuzu had a written contract granting JJCO the use of the Isuzu name and trademark.

7

But this by itself does not satisfy the requirements of a franchise.  JJCO had to have been required to pay a franchise fee.  The crux of the parties' dispute is whether JJCO paid Isuzu a franchise fee.

> Under Hawaii law, a franchise fee is:
>
> any fee or charge that a franchisee or subfranchisor is required to pay or agrees to pay for the right to enter into a business or to continue a business under a franchise agreement, including, but not limited to, the payment either in lump sum or by installments of an initial capital investment fee, any fee or charge based upon the amount of goods or products purchased by the franchisee from the franchisor or subfranchisor, any fee or charges based upon a percentage of gross or net sales whether or not referred to as royalty fees, any payment for goods or services, or any training fees or training school fees or charges.

Id.  There are six categories of payments that are not franchise fees:

> (1) the purchase or agreement to purchase goods at a bona fide wholesale price;
>
> (2) the purchase or agreement to purchase goods by consignment; if, and only if, the proceeds remitted by the franchisee from any such sale reflect only the bona fide wholesale price of such goods;
>
> (3) a bona fide loan to the franchisee from the franchisor;
>
> (4) the purchase or agreement to purchase goods at a bona fide retail price subject to a bona fide commission or compensation plan that in substance reflects only a bona fide wholesale transaction;

8

> (5) the purchase or agreement to purchase
> supplies or fixtures necessary to enter into
> the business or to continue the business
> under the franchise agreement at their fair
> market value;
>
> (6) the purchase or lease or agreement to
> purchase or lease real property necessary to
> enter into the business or to continue the
> business under the franchise agreement at the
> fair market value.

Id.

Neither party has cited, and the court has not found, published cases interpreting the Hawaii Franchise Law.  The court accordingly looks to cases that have interpreted similar statutes in other states.

The Seventh Circuit has noted that "[t]he purpose of most franchise laws is to protect franchisees who have unequal bargaining power once they have made a firm-specific investment in the franchisor."  Wright-Moore Corp. v. Ricoh Corp., 908 F.2d 128, 135 (7th Cir. 1990).  The "central function" of these statutes is "preventing suppliers from behaving opportunistically once franchisees or other dealers have sunk substantial resources into tailoring their business around, and promoting, a brand."  Kenosha Liquor Co. v. Heublein, Inc., 895 F.2d 418, 419 (7th Cir. 1990).  "The reason for the franchise fee requirement, in this light, is to insure that only those entities that have made a firm-specific investment are protected under the franchise laws; where there is no investment, there is no fear of inequality of bargaining power."  Wright-Moore, 908 F.2d at 135-36.

Applying these principles, the Seventh Circuit notes, "Not all payments made by a purported franchisee over the course of a business relationship constitute franchise fees." Sound of Music Co. v. 3M, 477 F.3d 910, 922 (7th Cir. 2007). Indeed, the Seventh Circuit has stressed "the highly fact-specific nature of the question whether alleged business expenses are franchise fees." To-Am Equip. Co. v. Mitsubishi Caterpillar Forklift Am., 152 F.3d 658, 663 (7th Cir. 1998). The guiding principle is that, "unless the expenses result in an unrecoverable investment in the franchisor, they should not normally be considered a fee." Wright-Moore, 908 F.2d at 136.

JJCO submits that cases such as Wright-Moore are inapposite because they analyze statutes distinguishable from the Hawaii Franchise Law. Wright-Moore involved an Indiana statute that provided:

> "Franchise fee" means any fee that a franchisee is required to pay directly or indirectly for the right to conduct a business to sell, resell, or distribute goods, services, or franchises under a contract agreement, including, but not limited to, any such payment for goods or services. "Franchise fee" does not include:
>
> (1) the payment of a reasonable service charge to the issuer of a credit card by an establishment accepting or honoring the credit card;
>
> (2) amounts paid to a trading stamp company by a person issuing trading stamps in connection with the retail sale of goods or services; or

10

> (3) the purchase or agreement to purchase
> goods at a bona fide wholesale price.

Ind. Code § 23-2-2.5-1(I).  In this respect, the Indiana statute

is almost identical to the Hawaii statute, differing only

slightly in its reference to a fee that is "required," while the

Hawaii statute refers to a fee that a franchisee "is required to

pay or agrees to pay."  Nowhere does the Indiana statute

explicitly exempt from the definition of a "franchise fee" an

expense incurred in the ordinary course of business or require

that the fee be an unrecoverable expense.  Nonetheless, as the

Seventh Circuit explains, "[t]he statute defines a franchise fee

as a fee paid for the <u>right</u> to do business, not as fees paid

during the course of business."  <u>Wright-Moore</u>, 908 F.2d at 136

(emphasis in original).

        In light of this distinction, courts have developed a

set of factors to determine whether particular payments

constitute franchise fees.  The United States District Court for

the Central District of California has summarized the

"interrelated factors" identified by various courts as follows:

> (1) whether the party making the payment
> received something of value in exchange for
> the fee; (2) whether the payment was an
> ordinary business expense or an unrecoverable
> investment; and (3) whether the party making
> the payment put its own money at risk.

<u>Adees Corp. v. Avis Rent a Car Sys.</u>, No. 02-6363, 2003 U.S. Dist.

LEXIS 26293 at *9 (C.D. Cal. Nov. 19, 2003) (citations omitted),

aff'd, <u>Adees Corp. v. Avis Rent a Car Sys.</u>, 157 Fed. Appx. 2 (9th Cir. 2005).

California's franchise law, applied in <u>Adees</u>, states:

"Franchise fee" means any fee or charge that a franchisee or subfranchisor is required to pay or agrees to pay for the right to enter into a business under a franchise agreement, including, but not limited to, any payment for goods and services.

However, the following shall not be considered the payment of a franchise fee:

(a) The purchase or agreement to purchase goods at a bona fide wholesale price if no obligation is imposed upon the purchaser to purchase or pay for a quantity of goods in excess of that which a reasonable businessperson normally would purchase by way of a starting inventory or supply or to maintain a going inventory or supply.

(b) The payment of a reasonable service charge to the issuer of a credit card by an establishment accepting or honoring that credit card.

(c) Amounts paid to a trading stamp company under Chapter 3 (commencing with Section 17750) of Part 3 of Division 7 by a person issuing trading stamps in connection with the retail sale of merchandise or service.

(d) The payment, directly or indirectly, of a franchise fee which, on an annual basis, does not exceed the sum of one hundred dollars ($100).

(e) The payment of a sum of not exceeding one thousand dollars ($1,000) annually on account of the purchase price or rental of fixtures, equipment, or other tangible property to be utilized in, and necessary for, the operation of the franchised business, if the price or rental so charged does not exceed the cost which would be incurred by the franchisee

12

>           acquiring the item or items from other
>           persons or in the open market.

Cal. Bus. & Prof. Code § 20007.  JJCO says that California law

differs from Hawaii law by exempting ordinary business costs from

the definition of "franchise fee."  However, the only provision

that even mentions ordinary business expenses concerns the amount

of inventory required, a matter JJCO maintains is not at issue.[1]

The statute also exempts fees that do not total at least $100 a

year, but the parties do not argue that this amount is relevant

here.

        For its part, Isuzu points to section 2(3) of its

Dealer Sales Agreement, which reads, "No fee or other monetary

consideration has been paid by Dealer to Distributor," as

evidence that no franchise fee was included in the agreement.

The court reads this as indicating that no lump sum payment was

required, not as by itself eliminating any franchise fee.  Hawaii

law clearly indicates that "any payment for goods or services, or

any training fees or training school fees or charges" is a

_____

        [1]JJCO does not allege that the minimum level of inventory
Isuzu required was an indirect service fee.  The Seventh Circuit
has held that "investments in excess inventory may constitute an
indirect franchise fee.  A normal sales quota, however, is not
enough to create a franchise fee because of the bona fide
wholesale price exception.  The quantity of goods must be so
unreasonably large that it is illiquid."  Wright-Moore, 908 F.2d
at 136.  As JJCO concedes, it incurred no financial penalty in
maintaining a normal level of inventory.  Furthermore, JJCO
admits that its purchase of inventory from Isuzu at wholesale
prices does not constitute a franchise fee under Hawaii law.

13

franchise fee.  Haw. Rev. Stat. § 482E-2.  Further, the statute does not require that a franchise fee be paid up front; it may be paid during the course of the franchise relationship for the right "to continue a business."  Id.

JJCO cites several expenses that it believes constitute an indirect franchise fee: purchase of tools, parts, and service equipment; communications system licensing fees; marketing fees and purchase of signs; employee training expenses; flooring arrangements; and service pricing.  Each of these involves unanswered factual questions.  This court concludes that, on the present record, JJCO does not meet its burden of demonstrating that any of these is a franchise fee as a matter of law.

A.   Tools, Parts, & Service Equipment

The court looks first at expenses for tools, parts, and service equipment.  JJCO's mere purchase of goods from Isuzu does not necessarily constitute a franchise fee.  The statute exempts from the definition of a "franchise fee" any "purchase or agreement to purchase goods at a bona fide wholesale price."  Id. As the Ninth Circuit noted in reviewing California's franchise law, "a payment to a manufacturer for goods or services may contain a hidden franchise fee when the price includes an overcharge."  Boat & Motor Mart v. Sea Ray Boats, Inc., 825 F.2d 1285, 1289 (9th Cir. 1987).  JJCO neither establishes that

14

California law differs from Hawaii law on this particular point nor shows that Isuzu overcharged it for any goods or services.

JJCO argues that Hawaii's statutory exception for goods purchased at wholesale prices only refers to goods purchased for resale.  The statute contains no such limitation.  The statute expressly exempts "the purchase or agreement to purchase supplies or fixtures necessary to enter into the business or to continue the business under the franchise agreement at their fair market value."  Haw. Rev. Stat. § 482E-2.  If the tools, parts, and service equipment were supplies or fixtures necessary to enter into the business and were purchased at their fair market value, they might not satisfy the "franchise fee" definition.  At the very least, JJCO has not, on the present record, established that amounts it paid for tools, parts, and service equipment were franchise fees.

B.   Communications System Licensing Fee

JJCO also asserts that it paid a franchise fee in the form of a communications system licensing fee.  JJCO says it paid a monthly charge to use Isuzu's computer network to transmit and receive information about vehicles, parts, and services.  A California appellate court upheld a lower court finding that payments for a telephone line, a directory listing, and a computer terminal were "nothing more than ordinary business expenses and not an investment required by [the defendant] for the right to operate a dealership."  Thueson v. U-Haul Internat.,

15

Inc., 144 Cal. App. 4th 664, 675 (2006).  JJCO argues that

Thueson is distinguishable because, in that case, unlike here,

the use of the computer system was agreed upon long after the

parties had agreed to do business together and was not required

by the defendant in the initial contract.  This court notes that,

while this is true of the computer system, the fee for the

telephone line in Thueson was included in the original contract.

The payment for phone services was found to be an ordinary

business expense and, as such, not a franchise fee.  JJCO does

not show why the fee it paid for use of the communications system

should be treated differently.

      The court is unpersuaded by JJCO's argument that

Thueson is distinguishable because the California statute

discussed in that case was intended "to protect franchise

investors—-i.e., those who 'pay for the right to enter into a

business.'"  Thueson, 144 Cal. App. 4th at 673.  The same could

be said of all franchise laws; all are intended to protect

franchisees that invest in a brand from losing bargaining power

in the business relationship as a result of their investment.

JJCO does not show that the intent of the Hawaii statute is any

different.

      JJCO urges this court to pay particular attention to

Laethem Equipment Co. v. Deere & Co., No. 05-10113, 2008 WL

4056359 (E.D. Mich. Aug. 26, 2008).  JJCO cites Laethem as

16

support for JJCO's contention that the cost of services charged

with no mark-up qualifies as a franchise fee.  JJCO reasons that,

while Hawaii law exempts the wholesale cost of goods from the

definition of "franchise fee," there is no exemption for the

wholesale cost of services.

The Michigan Franchise Investment Law at issue in

Laethem reads:

> "Franchise fee" means a fee or charge that a
> franchisee or subfranchisor is required to
> pay or agrees to pay for the right to enter
> into a business under a franchise agreement,
> including but not limited to payments for
> goods and services. The following are not the
> payment of a franchise fee:
>
> (a) The purchase or agreement to purchase
> goods, equipment, or fixtures directly or on
> consignment at a bona fide wholesale price.
>
> (b) The payment of a reasonable service
> charge to the issuer of a credit card by an
> establishment accepting or honoring the
> credit card.
>
> (c) Amounts paid to a trading stamp company
> by a person issuing trading stamps in
> connection with the retail sale of
> merchandise or service.
>
> (d) Payments made in connection with the
> lease or agreement to lease of a franchised
> business operated by a franchisee on the
> premises of a franchisor as long as the
> franchised business is incidental to the
> business conducted by the franchisor at such
> premises.

Mich. Code § 445.1503(1).

Laethem relied on a rule promulgated by the Michigan

Attorney General, providing:

17

> The words "fee or charge" . . . include, but
> are not limited to: . . . Payments for
> services. These payments are presumed to be
> in part for the right granted to the
> franchisee to engage in the franchise
> business.

Mich. Admin. Code R. 445.101(2)(c).  <u>Laethem</u> cited a federal
diversity case in Kentucky that applied Michigan law and that
deemed this administrative rule "a logical interpretation of the
Franchise Law."  <u>Tractor & Farm Supply v. Ford New Holland</u>, 898
F. Supp. 1198, 1204 (W.D. Ky. 1995).  JJCO argues that this court
should similarly rule that the communications system licensing
fee was a service expense that constituted a franchise fee.  The
court in <u>Tractor</u> concluded that "Plaintiffs' payments for
employee training, an on-line computer service, and their
required payments for, and use of, Defendant's advertising,
promotion, and sales materials, therefore, constitute a franchise
fee."  <u>Id.</u>

Like the Hawaii statute, the Michigan statute defines a
franchise fee as one that a franchise "is required to pay or
agrees to pay."  It is undisputed that JJCO was required to pay
the communications system licensing fee.  In <u>Laethem</u>, by
contrast, the parties disputed whether the payment in issue was
required, leading the court to conclude that there was a triable
issue precluding summary judgment.  It does not follow, however,
that the mandatory fee for Isuzu's communications system was
necessarily a franchise fee.  What is unclear from the record is

18

whether the fee was incurred for the right to do business with Isuzu or was the kind of expense JJCO would have had to incur even without the kind of agreement it had with Isuzu.

Isuzu says that it charged dealers less than it paid Partners Consulting, an independent information technology service provider, to develop and maintain the communications system. Robinson Decl. ¶ 11, April 14, 2009. Isuzu says that the system permitted JJCO to transmit and receive sales information, submit warranty claims, order parts, and provide monthly financial reports and other information. <u>Id.</u> Some of this information might have had to be received or transmitted to an automobile manufacturer regardless of whether there was or was not a franchise. If JJCO would have incurred some or all of the same communications system expense regardless of the nature of its agreement with the manufacturer, then it is difficult to see how the expense was one incurred for the right to do business with Isuzu. An expense that is a franchise fee, under either Hawaii law, is one paid "for the right to enter into a business or to continue a business under a franchise agreement." Haw. Rev. Stat. § 482E-2. It may be that JJCO would not have incurred the full expense charged but for the nature of its agreement with Isuzu, but the record does not presently establish that. For that reason, this court, like the court in <u>Laethem</u>, finds that questions of fact preclude summary judgment on this issue.

19

C.   <u>Marketing Fees</u>

JJCO also points to its marketing expenses as franchise fees.  JJCO was charged a direct fee by Isuzu for advertising and was required to purchase signs to display at the dealership.  The court finds guidance on this issue from other jurisdictions.

A federal court in Minnesota has held that advertising costs do not rise to the level of franchise fees if "the record is devoid of evidence that any of the marketing and advertising expenses that plaintiffs incurred were unreasonable or lacked a valid business purpose."  <u>Day Distrib. Co. v. Nantucket Allserve, Inc.</u>, No. 07-1132, 2008 WL 2945442 at *6 (D. Minn. July 25, 2008).  The Minnesota statute mirrors the Hawaii statute in all relevant respects:

> "Franchise fee" means any fee or charge that a franchisee or subfranchisor is required to pay or agrees to pay for the right to enter into a business or to continue a business under a franchise agreement, including, but not limited to, the payment either in lump sum or by installments of an initial capital investment fee, any fee or charges based upon a percentage of gross or net sales whether or not referred to as royalty fees, any payment for goods or services, or any training fees or training school fees or charges; provided, however, that the following shall not be considered the payment of a franchise fee:
>
> (a) the purchase of goods or agreement to purchase goods at a bona fide wholesale price;
>
> (b) the purchase of goods or agreement to purchase goods on consignment, if the proceeds remitted by the franchisee from any

such sale shall reflect only the bona fide wholesale price of such goods;

(c) the repayment by the franchisee of a bona fide loan made to the franchisee from the franchisor;

(d) the purchase of goods or agreement to purchase goods at a bona fide retail price subject to a bona fide commission or compensation plan that in substance reflects only a bona fide wholesale transaction;

(e) the purchase, at their fair market value, of supplies or fixtures or agreement to so purchase supplies or fixtures necessary to enter into the business or to continue the business under the franchise agreement;

(f) the purchase or lease, at the fair market value, of real property or agreement to so purchase or lease real property necessary to enter into the business or to continue the business under the franchise agreement.

Minn. Stat. § 80C.01

Similarly, Michigan law has been read as providing that an advertising expense must be a "substantial and unrecoverable investment" to qualify as a franchise fee.  Otherwise "any distributor who spent money training its employees with regard to the products it distributed, and promoting, marketing, and stocking those products, would be a franchisee."  Watkins & Son Pet Supplies v. Iams Co., No. 94-70379, 1995 WL 871235 at *4 (E.D. Mich. Apr. 5, 1995).  The court in Watkins concluded that such an interpretation would be an overbroad application of Michigan's franchise investment law.

21

Under Illinois law, only "advertising charges wholly disproportionate to any value provided" have the potential to constitute franchise fees.  TLMS Motor Corp. v. Toyota Motor Distribs., No. 95-1180, 1998 WL 182475, at *5 (N.D. Ill. April 15, 1998).  JJCO alleges only that it paid a monthly fee in exchange for marketing expenditures and was required to purchase signs to display at the dealership.  JJCO makes no showing that these expenses were unreasonable, nor that they were an investment locking JJCO into the Isuzu franchise.

        D.   <u>Training Expenses</u>

Perhaps the most persuasive of JJCO's arguments is that the expense of sending its employees to Isuzu's mandatory training sessions constitutes a franchise fee.  After all, "training fees or training school fees or charges" are expressly included in the statutory definition of a "franchise fee."  Haw. Rev. Stat. § 482E-2.

The court notes, however, that some of the fees JJCO identifies were paid to third parties for travel expenses for JJCO employees.  Pl.'s Ex. 16, 17.  The Ninth Circuit, discussing various state statutes, has observed that "[p]ayments made to parties other than the franchisor have regularly been regarded as not constituting fees."  <u>Boat & Motor Mart</u>, 825 F.2d at 1289. The Eighth Circuit, applying Minnesota law, has also held that "[t]he expenditure of funds for travel, lodging, food and other ordinary business expenses does not constitute a franchise fee."

<u>Schultz v. Onan Corp.</u>, 737 F.2d 339 (8th Cir. 1984) (citation
omitted).  Similarly, a bankruptcy court in New York dismissed a
claim for breach of the New York franchise law, when the
plaintiff failed "to plead affirmatively that the construction
and other costs incurred by Matterhorn were paid to [the
defendant] rather than to third parties." <u>In re Matterhorn
Group, Inc.</u>, 2000 WL 1174215 at *9 (Bankr. S.D.N.Y. Aug. 17,
2000).  This court is in agreement that payments to third parties
for reasonable travel expenses to and from training sessions do
not constitute franchise fees.

What remains for consideration among JJCO's asserted
training expenses are items for which there is little detail.
JJCO has provided invoices displaying charges from Isuzu for
training; these direct charges may or may not constitute
franchise fees.  Isuzu contends that these "training fees" were
payments for manuals and publications, not for training sessions,
alleging that it has never charged JJCO or its employees to
attend any training sessions.  Robinson Decl. ¶9.  Indeed, the
invoices describe reference guides, training videos, magazines,
and sales theme kits.  Pl.'s Ex. 18A.

Another invoice lists "Isuzu Parts Training" as the
sole charge.  Pl.'s Ex. 18C.  JJCO says this item was "software
to train parts personnel."  Jackson Decl. ¶ 14.  If these charges
are for goods and not training sessions, then, as discussed
earlier in this order, it may be that the costs of these goods

can be considered franchise fees only if the goods were purchased at a premium, something JJCO does not establish.  The invoice represents that "your Program Subscription Fee covers only a small portion of actual production costs of the above vehicles." Pl.'s Ex. 18A.  In saying that a charge for training materials "may be" a franchise fee only if it includes a premium, this court recognizes that Michigan treats training materials as services, the costs of which are franchise fees even absent a premium:

> Ideas, instruction, training, and other programs are services and not goods, irrespective of whether offered, distributed, or communicated by word of mouth, through instructions or lectures, in written or printed form, by record or tape recording, or any combination thereof.

Mich. Admin. Code R. 445.101(2)(c).  Whether the materials in issue here should be treated as services may depend on what those materials consisted of, something not established by the record.

It is not even clear that the court must reach the question of whether training materials should be deemed equivalent to training sessions, as JJCO maintains that the charges were for training sessions, not items.  If actual training sessions were involved, this court recognizes that "[t]raining can be highly firm-specific," and that "[c]osts incurred during training may be substantial and unrecoverable, locking the franchise into the franchisor." Wright-Moore, 908 F.2d at 136.  And the present case presents a stronger case than

Wright-Moore did for finding a franchise fee, because training

fees are expressly included in Hawaii's "franchise fee"

definition, unlike the Indiana definition at issue in Wright-

Moore.

JJCO may ultimately be able to establish that it paid

training fees that qualify as franchise fees, but the present

record is so sparse in that regard and the disputes so obvious

that this court cannot determine that as a matter of law.

E.   Flooring Arrangements

JJCO claims that Isuzu's requirement that it obtain

flooring arrangements (or wholesale financing) constitutes a

franchise fee.  A bankruptcy court in Maine rejected a similar

argument by a trustee who contended that a fee paid to a third-

party (not the distributor) to maintain a letter of credit was a

franchise fee.  O'Donnell v. Northwest Airlines (In re Northeast

Express Reg'l Airlines), 228 B.R. 53, 60-61 (Bankr. D. Me. 1998)

("I find that the letters of credit were security for the

advances and do not constitute a direct or indirect franchise fee

as a matter of  law.").  That court was interpreting the

Minnesota Franchise Act, which, as noted earlier, is similar to

Hawaii's statute.  Here, no fee was paid to Isuzu for the

flooring arrangements.  JJCO had the option of choosing any

lender and ultimately selected First Hawaiian Bank, with which

Isuzu had no financial arrangement.  JJCO has not shown that the

cost of obtaining wholesale financing was a franchise fee.

25

F.   Service Pricing

Finally, JJCO argues that the ADP Service Pricing fee Isuzu charged constitutes a franchise fee.  Service pricing was a particular program that JJCO elected to use to participate in Isuzu's required computerized communication system.  Isuzu emphasizes that the program was not mandatory.  The United States District Court for the Eastern District of Washington concluded that "the biweekly fee charged for participating in the maintenance program does not constitute a franchise fee because participation in the program is not mandatory."  Atchley v. Pepperidge Farm, Inc., 2006 WL 696317 at *6 (E.D. Wash. Mar. 20, 2006).  The relevant Washington statute, like the Hawaii statute, defines a franchise fee as "any fee or charge that a franchisee or subfranchisor is required to pay or agrees to pay for the right to enter into a business or to continue a business under a franchise agreement."  Wash. Rev. Code § 19.100.010.  Regardless of whether the fee is required or agreed to, the plaintiff must demonstrate that the fee is a condition of doing business with the franchisor.  Haw. Rev. Stat. § 482E-2.  Only 11 out of 230 Isuzu dealers nationwide opted into this program, which suggests that JJCO's decision to pay the fee was not payment for the right to enter into or continue business with Isuzu.

II.     CONCLUSION.

Because JJCO has not met its burden of demonstrating that it paid a franchise fee, it does not prove Isuzu's liability

under the Franchise Investment Act as a matter of law.  The

motion for partial summary judgment is DENIED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, May 22, 2009.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

JJCO Inc. v. Isuzu Motors America Inc., et. al; CIVIL NO. 08-
00419 SOM/LEK; ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT.