IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JJCO, INC., dba JACKSON ISUZU, a Hawaii corporation, | ) ) ) | CIVIL NO. 08-00419 SOM-LEK |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| ISUZU MOTORS AMERICA, INC., a Michigan corporation, et al., | ) ) ) | |
| Defendant. | ) ) | |

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S
MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**

Before the Court is Plaintiff JJCO, Inc.'s
("Plaintiff") Motion for Leave to File First Amended Complaint
("Motion"), filed on August 28, 2009.  Defendant Isuzu Motors
America, Inc. ("Defendant") filed its memorandum in opposition on
September 11, 2009 and Plaintiff filed its reply on September 18,
2009.  This matter came on for hearing on September 29, 2009.
Appearing on behalf of Plaintiff was Paul Herran, Esq., and
appearing on behalf of Defendant was Joseph Stewart, Esq.  After
careful consideration of the Motion, supporting and opposing
memoranda, and the arguments of counsel, Plaintiff's Motion is
HEREBY GRANTED IN PART AND DENIED IN PART for the reasons set
forth below.

**BACKGROUND**

On August 29, 2008, Plaintiff filed the instant action

in the First Circuit Court, State of Hawaii against Defendant.

In its Complaint, Plaintiff asserts three main areas of

allegations:

> 1) Isuzu violated numerous provisions of the
> Hawaii Franchise Investment Law, Haw. Rev. Stat. §
> 482(E), by unfairly and improperly terminating
> and/or refusing and failing to renew Jackson's
> automobile dealer franchise agreement, and by
> failing to deal with Jackson as franchisee in good
> faith;

> 2) Isuzu violated numerous provisions of the Motor
> Vehicle Industry Licensing Act, Haw. Rev. Stat. §
> 437, by attempting to coerce or coercing Jackson
> to perform acts not required by, or to refrain
> from performing acts not contrary to, the
> reasonable requirements of the franchise
> agreement, and by failing to renew Jackson's
> franchise agreement without good faith;

> 3) Isuzu's conduct arose to breach of contract,
> breach of covenant of good faith and fair dealing,
> unjust enrichment, and fraud.

On September 17, 2008, Defendant removed this action to federal

court.

On December 15, 2008, the Court filed its Rule 16

Scheduling Order ("Scheduling Order") in this matter. The

relevant deadlines in the Scheduling Order are as follows: (I)

jury trial to commence January 12, 2010, (ii) all motions to join

additional parties or to amend the pleadings shall be filed by

June 12, 2009, (iii) other non-dispositive motions, except for

motions in limine and discovery motions, shall be filed by

October 14, 2009, (iv) dispositive motions shall be filed by

August 12, 2009, and (v) expert witness disclosure deadline for

Plaintiff, July 13, 2009, and for Defendant, August 12, 2009.[1]
On June 15, 2009, the parties entered into a stipulation to
extend the deadline to file motions to join additional parties or
to amend the pleadings until August 28, 2009.

On August 28, 2009, Plaintiff filed the instant Motion.
Plaintiff requests leave to add two additional defendants – Isuzu
Motors America, LLC, a California limited liability company and
Isuzu Motors, Ltd., a Japan corporation ("Isuzu Japan") – and
joining those defendants in the current claims while adding a new
claim (Count VII) against Isuzu Japan for interference with
contract relations and prospective economic advantage.

Plaintiff first contends that new information suggests
that Isuzu Japan (Defendant's parent company) played a
significant role in the events alleged in this action.  Plaintiff
notes that the January 30, 2008 letter that Defendant sent it
announcing the discontinuation of passenger vehicles sales in
North America (the "Cessation Letter") was worded to reflect that
such discontinuation resulted from the prospective cessation of
production by General Motors ("GM").  [Motion, Exh. K.]  Since
then, Defendant has taken the position (in discovery responses

----

[1] In its order dated September 9, 2009, this Court extended
the non-dispositive motions deadline from October 14, 2009 until
October 19, 2009 and Defendant's expert disclosure from August
12, 2009 to September 28, 2009.

3

received in March 2009) that Isuzu Japan was solely responsible for that decision.  [Id., Exh. M.]  Plaintiff also points to the significant overlap of officers and directors for Defendant and Isuzu Japan, produced by Defendant on July 31, 2009, suggesting that Isuzu Japan exerted direct control over Defendant's actions or conspired with Defendant to carry out the events alleged in this action.  [Id., Exh. H.]

Plaintiff also contends that further information and evidence recently discovered also support its assertion that Isuzu Japan exerted control over the decisions that are the subject of this lawsuit:

1. Documents produced by Defendant on March 9, 2009 indicating that the Defendant's failure to generate profits in 2005, 2006, and 2007 was the reason for its decision rather than GM's purported decision to cease production.
2. Deposition testimony of GM's designated representative indicating that GM was willing, ready and able to produce vehicles through at least 2009 when Defendant surprisingly sent its January 30, 2008 termination email to GM at the direction of Isuzu Japan.
3. The "Change Request/Decision Notice" indicating that the production agreement between GM and Isuzu had been extended through the end of the 2009 model year demonstrating that Defendant's allegation of GM's prospective cessation of production was a pretext.
4. Defendant's disclaimer of any additional facts or possession of additional documents that would explain Defendant's decision to withdraw from the U.S. Market, which indicates that Isuzu Japan directly controlled Defendant's actions with respect to this lawsuit.

4

5.    Board documents of Defendant signed by
      parties who acted as officers and directors
      for both Defendant and Isuzu Japan showing
      the overlap between officers and directors
      was substantial and that Isuzu Japan exerted
      control over Defendant during this cessation
      transaction.
6.    The "Agreement on Isuzu GMT 360 Engineering"
      between Isuzu Japan, Defendant and GM
      indicating that Defendant does not operate
      independently of Isuzu Japan.

[Id., Exhs. E-G, H, I, J, M.]  Plaintiff also points to other

similar documents and agreements indicating that Defendant did

not operate independent of Isuzu Japan, and that Isuzu Japan

transacts business in place of or on behalf of Defendant.  [Id.,

Exhs. A, B, D.]

Plaintiff argues that Isuzu Japan directly participated

in causing the damages alleged in this action and that Defendant

is Isuzu Japan's alter ego.  As indicated in sworn answers to

interrogatories, Defendant had nothing to do with the decision to

discontinue the sale of passenger vehicles in North America and

that such decision was solely that of Isuzu Japan.  Isuzu Japan

also controlled the terms of the Sales Agreement that Defendant

offered to Plaintiff.  In the February 11, 2008 letter, Defendant

requires Plaintiff to release all claims against Isuzu Japan, who

has never been a party to the relationship between Plaintiff and

Defendant.  This suggests that Isuzu Japan was controlling the

restructuring of dealer relationships after the announcement.

Also suggestive of Isuzu Japan's control over these matters is

the fact that Defendant disclaims possession of any documents or
knowledge in connection with the drafting of the service
agreement requesting the release of claims against Isuzu Japan.
Plaintiff asserts that Defendant's likely position will be that
its own staff generated the service only agreement within 11 days
after it surprisingly learned of Isuzu Japan's decision to cease
sales.  That position is untenable and the strong inference is
that Isuzu Japan and Defendant were working on the agreement
together long before the January 30, 2008 public announcement of
cessation of vehicle production.  Defendant's (I) failure to
renew Plaintiff's dealership agreement, (ii) attempt to coerce
Plaintiff into releasing claims against Isuzu Japan, and (iii)
failure to repurchase inventory, are at the core issues upon
which the statutory violations claimed in Count I and II of the
original complain are based.  Thus, Plaintiff asserts that it
should be allowed to amend its complaint to assert those claims
against Isuzu Japan for its direct participation in those alleged
violations.

        Plaintiff also argues that Isuzu Japan likely
controlled Defendant's breach of contract based upon its
continuing denial of any plans or possession of any documents
related to the drafting of the service agreement.  Plaintiff also
suspects that Isuzu Japan directed Defendant to discontinue
marketing and promoting Isuzu vehicles, which is a breach of the

dealership agreement.  Through its control over Defendant, Plaintiff argues that Isuzu Japan caused Defendant to breach the covenant of good faith and fair dealing.  Isuzu Japan's purposeful concealment of its plans to discontinue passenger vehicles in North America while Defendant continued to sell vehicles to Jackson was not in good faith.  Likewise, Isuzu Japan's direction to Defendant to offer to repurchase Plaintiff's inventory in a manner vastly inconsistent with state law in an attempt to coerce Plaintiff into releasing claims against Isuzu Japan was also in breach of the covenant of good faith and fair dealing.  Plaintiff further argues that Isuzu Japan (I) has been unjustly enriched (profited from offering to pay Plaintiff less than adequate compensation and failing to repurchase Plaintiff's full inventory of vehicles), (ii) acted willfully, wantonly and with malice (all of Isuzu Japan's alleged actions were calculated and executed with the sole purpose of maximizing its profits and minimizing Defendant's losses), and (iii) controlled the timing of the public announcement to induce dealers such as Plaintiff to purchase Defendant's remaining inventory.

Alternatively, Plaintiff argues that even if Isuzu Japan's actions do not rise to the level of direct participation, then at a minimum, Isuzu Japan conspired with Defendant to commit the statutory violations, breaches of contract and torts alleges in this action.  It is clear from the information discovered

since the initial filing of this action that Isuzu Japan has played a pivotal role in planning Defendant's actions related to pulling out of the North America market.  In addition, Isuzu Japan had at least constructive knowledge, if not actual knowledge, of Defendant's business relationship with Plaintiff. Information and evidence discovered since the filing of the Complaint, has revealed that Isuzu Japan intentionally induced Defendant to breach its dealership agreement with Plaintiff and intentionally interfered with their business relationship when it unilaterally decided to discontinue vehicle sales in North America.

Finally, Plaintiff notes that leave to amend should be freely granted.[2]  Plaintiff had great difficulty in gathering information through discovery due to Defendant's "intransigence and stonewalling" and is now only learning of the extent of Isuzu Japan's involvement in this case as a result of documents produced by a non-party, GM.  Any delay has been due to Defendant's misrepresentation of the fact that Isuzu Japan controlled virtually all aspects of the events alleged in this action and Defendant's resistance to Plaintiff's discovery requests.  The claims against Isuzu Japan are in good faith and with no motive other than to preserve Plaintiff's remedies should

---

[2] Plaintiff appears to have inadvertently cited to the Hawaii Rules of Civil Procedure and Hawaii case law in support of its request for leave to amend.

it turn out that Isuzu Japan and not Defendant orchestrated the
conduct that has injured Plaintiff.  Further, Defendant will not
be prejudiced and in fact the proposed amendment may reduce
Defendant's ultimate liability and costs.  Also, if the parties
are still engaged in the initial discovery at the time the
amendment is proposed, an amendment should be allowed since it
will not delay the bringing of the case to trial.  [Mem. in Supp.
of Motion at 20 (citing Bechtel v. Robinson, 886 F.2d 644, 652
(3rd Cir. 1989); Evans v. Graber, Inc., 450 N.E. 2d 482 (Ill.
App. 1983); Calbretta v. National Airlines, Inc., 528 F. Supp. 32
(E.D.N.Y. 1981)).]  Discovery in this case is still ongoing
through November 13, 2009.

        In its opposition, Defendant argues that amending the
Complaint to add Isuzu Japan as a defendant would be futile
because the district court lacks jurisdiction over it.  Isuzu
Japan does no business in Hawaii, has no property in Hawaii and
has no agreements with Plaintiff.  Thus, Isuzu Japan is not
subject to either general or specific jurisdiction and therefore
is not subject to personal jurisdiction.  Defendant notes that it
is well established that a parent-subsidiary relationship alone
is insufficient to attribute the contacts of the subsidiary to
the parent for jurisdictional purposes.  Defendant does
acknowledge that the Ninth Circuit recognizes two exceptions to
that rule (when the subsidiary is an alter-ego of parent or when

9

the subsidiary acts as the general agent of parent) but argues that Plaintiff has failed to make out a prima facie showing that either of the foregoing apply.  In order to demonstrate that a parent and its subsidiary are not really separate entities, Plaintiff must make out a prima facie case that (1) there is such a unity of interest and ownership that the separate personalities no longer exist, and (2) that failure to disregard their separate identities would result in fraud or injustice.  [Mem. in Opp. at 4 (citing Doe v. Unocal Corp., 27 F. Supp. 2d 1174, 1187 (C.D. Cal. 1998)).]

Defendant contends that Plaintiff seeks to establish that it is the alter-ego of Isuzu Japan based upon the following:

1. The assertion that Isuzu Japan was solely responsible for the decision to cease distribution of passenger vehicles in North America;
2. A quotation from a letter from Defendant's President to GM wherein he referred to "the Isuzu group's plan to discontinue orders for SUVs and light duty trucks in North America;
3. The significant overlap between officers and directors of Defendant and those of Isuzu Japan;
4. The fact that the consent to cease passenger vehicle sales in the North America was signed by Isuzu Japan on behalf of Defendant; and
5. The fact that Isuzu Japan entered into agreements with GM for the development and manufacture of cars by GM.

However, even if true, Defendant asserts that those allegations would be sufficient to make a prima facie case that Defendant is the alter-ego of Isuzu Japan.

10

Defendant argues that courts have declined recognition of the alter-ego relationship in similar circumstances.  For example, in <u>Unocal</u>, the plaintiffs attempted to establish an alter-ego relationship based upon the parent's (1) involvement in its subsidiaries' acquisitions, divestments and capital expenditures, (2) formulation of general business policies and strategies applicable to its subsidiaries, (3) provisions of loans and other types of financing to its subsidiaries, (4) maintenance of overlapping directors and officers with its subsidiaries, and (5) alleged undercapitalization of holding company's subsidiaries.  The court found that such evidence did little more than to establish the parent as involved directly in decision making and deemed the parent a separate entity.  The decision was based in part on the court's reliance on a prior decision wherein the Ninth Circuit found no alter-ego relationship was created where the parent guaranteed loans for its subsidiaries, reviewed and approved its subsidiaries' major decisions, placed several of its directors on the subsidiary boards and was closely involved in the subsidiaries' pricing decisions.  [<u>Id.</u> at 6 (citing <u>Kramer Motors, Inc. v. British Leyland, Ltd.</u>, 628 F.2d 1175, 1177 (9th Cir. 1980)).]

Moreover, Defendant contends that the assertion that there is significant overlap of directors and officers between it and Isuzu Japan is misleading.  For the last five years,

Defendant asserts that no more than two individuals have served as either a director or an officer of both it and Isuzu Japan at any one time despite there being an average of fifty-seven total officer and director positions between the two entities. Plaintiff also makes several other unsupported conclusory statements.  For example, Plaintiff asserts that Isuzu Japan's signature on behalf of Defendant to consent to cease sales of passenger vehicles in North America further indicates that Isuzu Japan exerted control over Defendant.  However, that signature does nothing more than to establish that Isuzu Japan owns 100% of the outstanding shares of Defendant, which does not by itself make a subsidiary the alter-ego of the parent.  [Id. at 7 (citing Harris Rustky & Co. Ins. Ser., Inc. v. Bell & Clements, Ltd., 328 F.3d 1122 (9th Cir. 2003)).]

Defendant also argues that it is not the agent of Isuzu Japan.  In a prior decision, Defendant states that the Ninth Circuit held that a distributor defendant was not an agent of the manufacturer defendant even though the manufacturer defendant exerted control over the distributor, which included that (1) the form of dealership agreements would be furnished by the manufacturer to distributor, (2) the distributor was obliged to use such forms, (3) the manufacturer could terminate the distributorship if sales volume was insufficient, (4) the manufacturer could veto prospective appointments of dealers, (5)

the distributor's method of distribution and location of dealers was subject to the approval of the manufacturer, (6) the manufacturer could give directives to the distributor's dealers and the distributor would enforce compliance, and (7) the manufacturer required the distributor to maintain inventories of parts and vehicles.  [Id. at 9 (citing Stansifer v. Chrysler Motors Corp., 487 F.2d 59, 65, 66 (9th Cir. 1973).  In addition, the court noted in order for an agency relationship to exist, the plaintiff must show that (1) the agent acted on behalf of his principal, and (2) the agent had the power to bind the principal, which did not exist between the manufacturer and distributor. Defendant argues that similarly, Plaintiff in this action cannot show that an agency relationship existed between Defendant and Isuzu Japan.

Defendant next argues that Plaintiff confuses the doctrines of alter-ego and "direct participation."  Defendant contends that Plaintiff's citation to authority (111 Am. Jur. Trials 205) in reference to the alter-ego doctrine, is misleading in that such authority actually discusses the theory of "direct participation" as a means of holding the parent liable for the acts of its subsidiary.  Unlike the alter-ego doctrine, the theory of "direct participation" does little more than to confer liability upon a parent for wrongful conduct.  Further, Plaintiff's allegations regarding the direct participation of

13

Isuzu Japan do not in any event give rise to a direct
participation cause of action.  For example, Plaintiff asserts
that Isuzu Japan controlled the decision to discontinue passenger
vehicle sales in North America.  Even if true, Defendant cannot
see how that would impose liability on Isuzu Japan.  Other
statements made such as "Plaintiff reasonably suspects that
[Isuzu Japan] has also directed Isuzu to discontinue marketing
and promoting vehicle sales" are equally tenuous.  With respect
to Isuzu Japan's alleged participation in Defendant's breach of
the covenant of good faith and fair dealing and fraud, Plaintiff
alleges that Isuzu Japan had "constructive knowledge" of those
transactions.  However, even as recognized by Plaintiff, the
theory of "direct participation" requires direct intervention or
intermedlling by the parent in the affairs of the subsidiary, and
after the fact constructive knowledge does not give rise to that
level of required activity.

        In addition to lack of jurisdiction, Defendant contends
that adding a claim based upon interference with contractual
relations and prospective business advantage is futile based on
the complete failure by Plaintiff to demonstrate any elements of
the claim.  Under Hawaii law, in order to prove interference with
contractual relations, the plaintiff must demonstrate (1) a
contract between plaintiff and a third party, (2) defendant's
knowledge of the contract, (3) defendant's intentional inducement

14

of the third party to breach the contract, (4) absence of justification on the defendant's part, (5) the subsequent breach of the contract by the third party, and (6) damages to the plaintiff. [Id. at 13 (citing Kahala Royal Corp. v. Goodsill Anderson Quinn & Stifel, 113 Hawai`I 251, 268 n.17 (2007)).]  The test for interference with prospective business advantage is (1) the existence of a valid business relationship, (2) knowledge of the relationship by defendant, (3) purposeful intent to interfere with the relationship, (4) legal causation between the act of interference and the impairment of the relationship, and (5) actual damages. [Id.]  Defendant contends that adding this new claim would be at total odds with Plaintiff's claim that Defendant is a mere instrumentality or alter-ego of Isuzu Japan. If, as Plaintiff asserts, Defendant and Isuzu Japan are one and the same, it would be illogical for Plaintiff to argue that Isuzu Japan somehow induced itself to breach a contract.  In other words, the "third party" element would be lacking.

Isuzu contends that the real motivation behind this Motion is Plaintiff's desire to obtain documents which are in the custody and control of Isuzu Japan rather than a legitimate request to amend the complaint.  The purpose of Fed. R. Civ. P. 15(a) is not to obtain documents from a third party.  The clear mechanism to obtain documents from a third party is under Rule 45.  Finally, Defendant asserts that Fed. R. Civ. P. 15 is not

15

the proper vehicle to add Isuzu Motors America, LLC as a
defendant.  Instead, Defendant argues that Plaintiff needs to
seek the substitution of Defendant for Isuzu Motors America, LLC
pursuant to motion filed under Fed. R. Civ. P. 25©.

In its reply, Plaintiff asserts that there is personal
jurisdiction over Isuzu Japan on the basis of its "minimum
contacts" with the United States as a whole.  Plaintiff notes
that up until 2002, GM was a major shareholder in Isuzu Japan.
In addition, between 2004 and 2008, Isuzu Japan has had a minimum
of one its officers or directors serving as officers or directors
for Defendant, located in California.  Moreover, the Consent and
Unanimous Written Consent signed on behalf of Isuzu Japan shows
that Isuzu Japan subjected itself to laws of the State of
Michigan satisfying the "minimum contacts" test for purposes of
personal jurisdiction.

## DISCUSSION

I.   **Standard**

Under Rule 15(a), once a responsive pleading has been
filed, a party must obtain leave of court or the written consent
of the opposing party to amend its pleadings.  "The court should
freely give leave when justice so requires." Fed. R. Civ. P.
15(a)(2).  The determination whether a party should be allowed
to amend a pleading is left to the discretion of the court.  See
Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330

(1971) (citation omitted).  If the facts or circumstances a plaintiff relies upon may be the basis of relief, she should be afforded an opportunity to test her claim on the merits.  <u>See</u> <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962).  Furthermore, in exercising its discretion to grant leave to amend, a court "'should be guided by the underlying purpose of Rule 15(a) . . . which was to facilitate decisions on the merits, rather than on technicalities or pleadings.'"  <u>In re Morris</u>, 363 F.3d 891, 894 (9th Cir. 2004) (quoting <u>James v. Pliler</u>, 269 F.3d 1124, 1126 (9th Cir. 2001)) (alteration in original).

Courts may consider factors such as: bad faith or dilatory motive on the movant's part; whether the amendment will cause undue delay; whether it will prejudice the opposing party; futility of the amendment; and whether the movant has already failed to cure deficiencies in prior amendments of her pleadings. <u>See</u> <u>Foman</u>, 371 U.S. at 182; <u>Morris</u>, 363 F.3d at 894 (citation omitted).  Not all of these factors carry equal weight; prejudice to the opposing party is the most persuasive factor.  <u>See</u> <u>Eminence Capital, LLC v. Aspeon, Inc.</u>, 316 F.3d 1048, 1052 (9th Cir. 2003) (citation omitted).  The party opposing the motion for leave to amend bears the burden of establishing prejudice.  <u>See</u> <u>DCD Programs, Ltd. v. Leighton</u>, 833 F.2d 183, 187 (9th Cir. 1987) (citing <u>Beeck v. Aqua-slide 'N' Dive Corp.</u>, 562 F.2d 537, 540 (8th Cir. 1977)).  If there is neither prejudice to the opposing

party nor a strong showing of the remaining factors, there is a
presumption in favor of granting leave to amend.  See Eminence,
316 F.3d at 1052 (citing Lowrey v. Tex. A&M Univ. Sys., 117 F.3d
242, 245 (5th Cir. 1997)).

   "Futility of amendment can, by itself, justify the
denial of a motion for leave to amend."  Bonin v. Calderon, 59
F.3d 815, 845 (9th Cir. 1995).  An amendment is futile when "no
set of facts can be proved under the amendment to the pleadings
that would constitute a valid and sufficient claim or defense."
Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988)
(citations omitted).

## II.   Lack of Personal Jurisdiction

   Defendant argues that amending the Complaint to add
Isuzu Japan as defendant in this action would be futile because
this district court has no personal jurisdiction over it.  This
Court agrees.

   Generally, personal jurisdiction over a non-resident
defendant is proper if permitted by a state's long-arm statute
and if the exercise of that jurisdiction does not violate federal
due process.  Fireman's Fund Ins. Co. v. Nat'l Bank of Coops.,
103 F.3d 888, 893 (9th Cir. 1996).  Hawaii's long-arm statute,
Hawaii Revised Statutes § 634-35, reaches to the full extent
permitted by the Constitution.  Cowan v. First Ins. Co ., 61 Haw.
644, 649 n. 4, 608 P.2d 394, 399 n. 4 (1980).  Thus, this Court

need only decide whether federal constitutional due process principles permit the exercise of personal jurisdiction over Isuzu Japan.  See Schwarzenegger v.. Fred Martin Motor Co., 374 F.3d 797, 801 (9th Cir. 2004).

For due process to be satisfied, a defendant, if not present in the forum, must have "minimum contacts" with the forum state such that the assertion of jurisdiction "does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  The conduct attributed to defendant must have been such that he "should reasonably anticipate being haled into court" in the forum state. See Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1130 (9th Cir.2003) (citation omitted).

Personal jurisdiction exists in two forms, general and specific.  Dole Food Co. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002).  General jurisdiction exists over a non-resident defendant when there is "continuous and systematic general business contacts that approximate physical presence in the forum state." Schwarzenegger, 374 F.3d at 801 (internal citation and quotation marks omitted).  "This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." Id.

In the absence of general jurisdiction, the court may

19

still exercise specific jurisdiction over a non-resident

defendant.  TO determine if specific jurisdiction exists, the

Ninth Circuit applies a three-part inquiry:

> (1) the non-resident defendant must purposefully
> direct his activities or consummate some
> transaction with the forum or resident thereof; or
> perform some act by which he purposefully avails
> himself of the privileges of conducting activities
> in the forum, thereby invoking the benefits and
> protections of its laws; (2) the claim must be one
> which arises out of or relates to the defendant's
> forum-related activities; and (3) the exercise of
> jurisdiction must comport with fair play and
> substantial justice, i.e. it must be reasonable.

Harris Rutsky & Co. Ins. Servs., Inc., 328 F.3d at 1129 (citation

omitted).

Plaintiff appears to concede that Isuzu Japan has not

had any contacts with Hawaii, the forum state, but instead argues

that personal jurisdiction "over a foreign corporation may be

founded on the corporation's contacts with the United States as

whole as opposed to its contacts with the forum state."  [Reply

at 4.]  In particular, Plaintiff relies on the following language

from a Sixth Circuit decision: "The appropriate inquiry to be

made in a federal court where the suit is based upon a federally

created right is whether the defendant has certain minimal

contacts with the United States, so as to justify due process

requirements."  [Id. (quoting Chrysler Corp. v. Fedders Corp.,

643 F.2d 1229, 1238 (6th Cir. 1981).  As can be easily gleaned

from the face of such quoted language, however, looking to the

minimum contacts a foreign corporation has had with the United

States as a whole is appropriate only where the suit is based on

a federal law or right.[3]  In <u>Chrysler</u>, the lawsuit concerned an

alleged violation of the Clayton Act, the federal anti-trust

statute.[4]  643 F.2d at 1248.  Here, all of Plaintiff's claims

come under Hawaii state law; there are no federal claims or

rights at issue in this action.  Accordingly, this Court looks to

the minimum contacts Isuzu Japan had with Hawaii (the forum

state), and not the United States as a whole.  There being none,

this Court finds that personal jurisdiction over Isuzu Japan is

lacking.[5]

_____

[3] "This 'national contacts' or 'aggregate contacts' concept
is based on the proposition that a court's jurisdictional power
to render a binding judgment on federal questions must be
examined in light of the due process clause of the Fifth rather
than the Fourteenth Amendment."  <u>Chrysler</u>, 643 F.2d at 1237-38.
Under that view, "the judicial jurisdiction over the person of
the defendant does not relate to the geographical power of the
particular court which is hearing the controversy, but to the
power of the unit of government of which that court is a part."
<u>Id.</u> at 1238.  Importantly, however, the Sixth Circuit declined to
reach whether the "national contacts" test would satisfy due
process under the Fifth Amendment because it otherwise found that
the foreign corporation, in any event, did not have sufficient
national contacts with the United States.  <u>Id.</u>

[4] Notably, the Sixth Circuit utilized the state forum
minimum contacts (and not the "national contacts") analysis, in
determining that there was no personal jurisdiction over the
foreign defendant regarding plaintiff's state law claim of
conspiracy.  <u>Id.</u> at 1237.

[5] All of the evidence and allegations presented by Plaintiff
reference contacts by Isuzu Japan with the states of Michigan,
California and Delaware, but none in Hawaii.  [Reply at 4-7.]

Plaintiff also appears to allege that personal jurisdiction exists over Isuzu Japan, not on any direct business or tortious contact with Plaintiff in Hawaii, but instead under the theory that Isuzu Japan is the alter-ego or co-conspirator of Defendant.  [Motion, Exh. N ¶¶ 19-27.]  As Defendant points out, it is well-established that a parent-subsidiary relationship by itself is insufficient to attribute the minimum contacts of the subsidiary to the parent.  An exception to that rule, however, is when the subsidiary acts as the alter-ego of the parent.  Harris Rutsky & Co. Ins. Servs., Inc., 328 F.3d at 1134.

A corporation may be the alter ego of another "where recognition of the corporate fiction would bring about injustice and inequity or when there is evidence that the corporate fiction has been used to perpetrate a fraud or defeat a rightful claim." Robert's Hawaii School Bus, Inc. v. Laupahoehoe Transportation, 91 Hawai'i 224, 241-42, 982 P.2d 853, 870-71 (1999) (quoting Chung v. Animal Clinic, Inc., 63 Haw. 642, 645, 636 P.2d 721 (1981)); see also Kahili, Inc. v. Yamamoto, 54 Haw. 267, 271-72, 506 P.2d 9 (1973).  Generally, the question of whether a corporation is an alter ego of another is a question of fact. Robert's Hawaii, 91 Hawai`I at 238, 982 P.2d at 867.

In evaluating alter ego liability, there are numerous factors to consider.  There is no one determinative factor.  Some of the most relevant factors include: 1) commingling or failing

to separate funds; 2) "the failure to adequately capitalize a corporation"; 3) "the total absence of corporate assets, and undercapitalization"; 4) "the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual or another corporation"; 5) "the concealment and misrepresentation of the identity of the responsible ownership, management and financial interest"; 6) "the disregard of legal formalities and the failure to maintain arm's length relationships among the related entities"; 7) "the formation and use of a corporation to transfer to it the existing liability of another person or entity"; 8) "whether the subsidiary has no business or assets except those conveyed to it by the parent"; and 9) the parent's financing of the subsidiary. Id. at 242, 982 P.2d at 871.

Based on the above factors, and the factual allegations and evidence submitted with this Motion, the Court does not see how Defendant is the alter-ego or mere instrumentality of Isuzu Japan.  For example, Plaintiff relies heavily on the assertion that there is a "significant" overlap of directors and officers between Defendant and Isuzu Japan indicating control and domination Isuzu Japan.  That reliance is misplaced.  The evidence, as pointed out by Defendant, indicates that at most, there was an overlap of three officers or directors in any given year between 2004 and 2008.  In each of those years, Defendant

consisted of between seven and ten directors and fifteen and eighteen officers.  An overlap of several of Isuzu Japan's directors or officers, given the total amount of Defendant's directors and officers in those years, is a nominal overlap at best and is certainly no indication that Isuzu Japan exerted control over Defendant.

Other evidence that Plaintiff relies on to assert alter-ego liability, is similarly unavailing.  First, Plaintiff makes much of several un-executed engineering and supply agreements between Isuzu Japan and GM to show control over Defendant by Isuzu Japan.  [Motion, Exhs. A, B, D, E.]  Those agreements, however, simply demonstrate that Isuzu Japan was collaborating with GM on the proposed next generation of certain Isuzu vehicles for the U.S. market.  There is nothing to indicate that entering engineering agreements with GM were outside of the scope of Isuzu Japan's legitimate duties and obligations as the manufacturer of Isuzu vehicles.  Nor is there anything to indicate that the "engineering" of vehicles fell within Defendant's responsibilities such that Isuzu Japan's agreement with GM could be considered a usurpation of such responsibility.

Plaintiff also asserts that Defendant's "Unanimous Written Consent of the Board of Directors" and the "Consent in Lieu of Meeting of Shareholders", both resolutions made in connection with the approval to cease sales of Isuzu passenger

24

vehicles in North America, are indicative of Isuzu Japan's control over Defendant because the resolutions are signed by parties who acted as officers or directors for both.  [Motion, Exhs. I, J.]  As discussed above, however, the overlap of officers and directors is nominal at most and certainly not indicative of Isuzu Japan's control over Defendant.  More notably, of the five Defendant directors that signed the "Unanimous Written Consent of the Board of Directors", there is an overlap of only one Isuzu Japan director; there is no overlap of directors or officers concerning the signature on the "Consent in Lieu of Meeting of Shareholders."  Further, Plaintiff points to no evidence or even alleges that the execution of the aforementioned resolutions were in disregard of proper corporate formalities or were otherwise improper.  In sum, the facts and allegations submitted in this Motion, even in the light most favorable to Plaintiff, are insufficient to establish that Defendant was the alter-ego of Isuzu Japan for purposes of personal jurisdiction over Isuzu Japan in this action.

Finally, personal jurisdiction under Plaintiff's alternative conspiracy theory of liability is lacking as well. Plaintiff's conspiracy allegations appear to be related solely to Count VI (Fraud, Misrepresentation, Concealment, and Non-

Disclosure) of the proposed First Amended Complaint.[6]  [Motion,

Exh. N ¶¶ 74-78.]  In that count, Plaintiff's sole factual

allegation of wrongdoing concerns representations made by

Defendant's regional sales representative for Hawaii that Isuzu

was not pulling out of the U.S. market despite Defendant's plans

to do so.  Plaintiff alleges that Defendant and Isuzu Japan knew

or should have known that such representations were not true and

that Plaintiff relied on them to its detriment.  Other than

conclusory allegations of conspiracy, however, Plaintiff does not

allege how Isuzu Japan participated with Defendant in any alleged

conspiracy to misrepresent, conceal, or omit material information

or otherwise perpetuate a fraud upon Plaintiff.  That, without

more, cannot constitute sufficient minimum contacts with Hawaii

to justify personal jurisdiction over Isuzu Japan.  See, e.g.,

Chrysler Corp., 643 F.2d at 1237 (holding that conspiracy

allegations unsupported by factual assertions were insufficient

to assert personal jurisdiction over foreign defendant).

---

[6] Counts I-IV of the Complaint concern allegations that
Defendant violated certain Hawaii statutory franchising and
licensing laws and otherwise breached its agreement(s) with
Plaintiff.  [Motion, Exh. N ¶¶ 28-70.]  Count V concerns a claim
that Defendant and Isuzu Japan were unjustly enriched as a result
of Defendant's alleged breach of its agreement(s) with Plaintiff.
[Id. ¶¶ 71-78.]  And, Count VII is a direct claim against Isuzu
Japan, in the alternative, that it interfered with contract
relations and prospective business advantage between Defendant
and Plaintiff.  [Id. ¶¶ 92-99.]

## III. __Undue Delay__

In addition, the Court finds that amending the Complaint to add a defendant such as Isuzu Japan would cause an undue delay in the completion of the litigation given the scheduled jury trial date of January 12, 2010.  In addition, many of the motions and other deadlines have already passed and the discovery deadline is only a month away.  Further, the Court notes that much of the documents and information relied upon by Plaintiff in requesting leave to amend, were in Plaintiff's possession well before the filing date of the Motion.  Therefore, granting Plaintiff leave to amend to add Isuzu Japan at this stage would cause undue delay.

The Court, however, finds that no such undue delay will result in granting Plaintiff leave to amend to add Isuzu Motors America, LLC as a defendant in this action.  Plaintiff's request is on the basis that in the first footnote on page 3 of Defendant's April 14, 2009 Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, Defendant asserted that it had converted from Isuzu Motors America, Inc. to Isuzu Motors America, LLC.  Moreover, at the hearing on this Motion, counsel for Defendant indicated that he had no objection to such amendment.  Therefore, leave to amend is granted only with respect to adding Isuzu Motors America, LLC as a defendant in this case, and is denied in all other respects.  Plaintiff should

27

file its amended complaint adding Isuzu Motors America, LLC as a party therein no later than two weeks from the date of this order.

**CONCLUSION**

On the basis of the foregoing, Plaintiff's Motion for Leave to File First Amended Complaint, filed on August 28, 2009, is HEREBY GRANTED IN PART AND DENIED IN PART.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, October 9, 2009.



/S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States Magistrate Judge

**JJCO, INC. V. ISUZU MOTORS AMERICA, INC., ET AL; CIVIL 08-00419 SOM-LEK; ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**