IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JJCO, INC., dba JACKSON ISUZU, a Hawaii Corporation, | ) ) ) | CIV. NO. 08-00419 SOM/LEK |
| Plaintiff, | ) ) | ORDER DENYING PLAINTIFF'S MOTION TO ALTER OR AMEND |
| vs. | ) ) ) | JUDGMENT AND/OR TO ORDER A NEW TRIAL |
| ISUZU MOTORS AMERICA, INC., a Michigan Corporation, JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10; DOE GOVERNMENTAL AGENCIES 1-10; DOE PARTNERSHIPS 1-10; DOE ENTITIES 1-10, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

ORDER DENYING PLAINTIFF'S MOTION TO ALTER OR AMEND
JUDGMENT AND/OR TO ORDER A NEW TRIAL

I.       INTRODUCTION.

This diversity case centers around whether Defendant Isuzu Motors America, Inc. ("Isuzu"), acted unlawfully when it ceased distributing motor vehicles in North America and offered its dealer, Plaintiff JJCO, Inc. ("JJCO"), the option of being a service-only dealer. After a lengthy trial, the jury found that Isuzu had not acted unlawfully. JJCO now asks this court to order a new trial, or to alter or set aside the judgment because the jury allegedly erred in finding for Isuzu. This court denies JJCO's motion, as JJCO does not show that it is entitled to such relief.

II.     BACKGROUND.

In 1998, JJCO and Isuzu agreed that Isuzu would supply motor vehicles to JJCO, which would then distribute the motor vehicles in Hawaii.  See JJCO, Inc. v. Isuzu Motors America, Inc., 2009 WL 1444103, *1 (D. Haw. May 22, 2009).  Two years later, JJCO entered into an Isuzu Dealer Sales and Service Agreement with Isuzu that allowed JJCO to identify itself as an Isuzu dealer and sell Isuzu vehicles.  Id.  This agreement was amended several times, and, like most contracts, explained the rights and responsibilities of each party.  The agreement required JJCO to submit monthly financial statements to Isuzu, maintain flooring arrangements with a bank, and install and maintain Isuzu signs, among other things.  See Dealership Standards Addendum at I00035, attached as Ex. 48 to JJCO's Motion.

In 2008, Isuzu announced that it was discontinuing distribution of Isuzu passenger vehicles in North America.  It offered to have Isuzu vehicle dealers, including JJCO, continue as service-only dealers.  This offer was set forth in an Isuzu Service Dealer Agreement.  JJCO declined this offer and filed this lawsuit.

JJCO's Complaint asserts seven counts: violation of the Hawaii Franchise Investment Law (Count 1), violation of the Hawaii Motor Vehicle Licensing Act (Count II), breach of the

Isuzu Dealer Sales and Service Agreement (Count III), bad faith (Count IV), unjust enrichment (Count V) fraud, misrepresentation, and nondisclosure (Count VI);, and wanton and malicious behavior (Count VII).

In early 2009, JJCO moved for summary judgment on Count I, alleging violations of the Hawaii Franchise Investment law. To succeed, JJCO had to prove that a franchise relationship existed, which in turn required proof that JJCO had had to pay a franchise fee. JJCO, 2009 WL 1444103, at *3. With respect to a franchise fee, JJCO argued that certain required purchases and fees (such as a communications system licensing fee, a marketing fee, and employee training expenses) constituted franchise fees. Id. at *6. This court concluded that whether any of these expenses was a franchise fee was a factual question that could not be determined on summary judgment. Id. Accordingly, this court denied JJCO's motion.

Trial began on February 9, 2010. Trial witnesses included Jack Jackson, Russell Wong (a former JJCO employee), Edwin Robinson (an Isuzu employee), and J. Terry Maloney (Isuzu's president). As JJCO's case concluded, Isuzu filed seven motions for judgment as a matter of law, one for each Count. This court denied Isuzu's motions as to Count I (Hawaii Franchise Investment Law) and Count III (breach of contract). This court granted the motions as to Count IV (breach of good faith) and in part as to

Count II (Hawaii Motor Vehicle Licensing Act).  The court reserved ruling on the motions that sought judgment on the equitable counts, noting that they would not be submitted to the jury.

The jury found for Isuzu.  This court then ruled in favor of Isuzu on the outstanding equitable claims.  Judgment was entered on March 8, 2010.

JJCO now moves for an order altering or amending the judgment or directing a new trial.

III.    STANDARD OF REVIEW.

    A.     Rule 50(b) (Renewed/Alternative Motion for a New Trial Filed After Trial)

Rule 50(b) provides, "No later than 28 days after the entry of judgment, . . . the moving party may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59." Fed. R. Civ. P. 50(b).

A party must have filed a motion for judgment as a matter of law under Rule 50(a) to be entitled to bring a renewed motion for judgment as a matter of law under Rule 50(b).  See EEOC v. Go Daddy Software, 581 F.3d 951, 961 (9th Cir. 2009) (noting that a Rule 50(b) is "not a free standing motion" but a renewed Rule 50(a) motion).  Any Rule 50(a) motion must be filed before a case is submitted to the jury.  If the judge denies or defers ruling on the Rule 50(a) motion, and if the jury returns a

verdict against the moving party, the party may renew its motion under Rule 50(b). "Because it is a renewed motion, a proper post-verdict Rule 50(b) motion is limited to the grounds asserted in the pre-deliberation Rule 50(a) motion." Id.; Freund v. Nycomed Amersham, 347 F.3d 752, 761 (9th Cir. 2003).

        B.      Rule 59(a) (Motion For a New Trial)

Rule 59(a) of the Federal Rules of Civil Procedure provides that a court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). Rule 59 does not specify the grounds on which a motion for a new trial may be granted. Zhang v. Am. Gem Seafoods, Inc., 339 F.3d 1020, 1035 (9th Cir. 2003). Rather, the court is "bound by those grounds that have been historically recognized." Id. Historically recognized grounds for a new trial include a verdict that is against the weight of the evidence, damages that are excessive, or a trial that was not fair to the moving party. Molski v. M.J. Cable, Inc., 481 F.3d 724, 729 (9th Cir. 2007). A new trial may be granted only if, after weighing the evidence as the court saw it, "the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." Molski, 481 F.3d at 729 (quoting Passantino v. Johnson & Johnson Consumer Prods., 212 F.3d 493, 510 n.15 (9th Cir. 2000)).

   C.  Rule 59(e) (Motion to Alter or Amend Judgment)

  Rule 59(e) of the Federal Rules of Civil Procedure allows a party to file a motion to alter or amend the judgment "no later than 28 days after the entry of judgment."  Fed. R. Civ. P. 59(e).  The granting of a Rule 59(e) motion is "an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources."  Kona Enter., Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000) (internal quotations omitted).

  There are four grounds upon which a Rule 59(e) motion may be granted:

> 1) the motion is "necessary to correct manifest errors of law or fact upon which the judgment is based;" 2) the moving party presents "newly discovered or previously unavailable evidence;" 3) the motion is necessary to "prevent manifest injustice;" or 4) there is an "intervening change in controlling law."

Turner v. Burlington N. Santa Fe R.R. Co., 338 F.3d 1058, 1063 (9th Cir. 2003) (quoting 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2810.1 (2d ed. 1995)).

   D.  Rule 60(b) (Motion for Relief From Judgment)

  Rule 60(b) permits a district court to relieve a party from a final order or judgment on grounds of: "(1) mistake, inadvertence, surprise, or excusable neglect; (3) fraud . . . of

6

an adverse party, . . . or (6) any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b). Rule 60(b)(6) is "'used sparingly as an equitable remedy to prevent manifest injustice' and 'is to be utilized only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment.'" Latshaw v. Trainer Wortham & Co., Inc., 452 F.3d 1097, 1103 (9th Cir. 2006) (quoting United States v. Washington, 394 F.3d 1152, 1157 (9th Cir. 2005)).

IV.     ANALYSIS.

    A.      JJCO May Not Bring This Motion Under Rule 50(b).

As an initial matter, the court denies JJCO's motion to the extent it is brought under Rule 50(b). Rule 50(b) allows a party to file a renewed motion for judgment as a matter of law ("JMOL"). Because JJCO did not file a motion for JMOL under Rule 50(a), it is barred from bringing the present "renewed" motion under Rule 50(b). See Go Daddy Software, 581 F.3d at 961. JJCO says that, because its motion for summary judgment, filed and decided almost a year before JJCO's case went to trial, was equivalent to a motion for JMOL under Rule 50(a), it may bring a "renewed" motion under Rule 50(b).[1] JJCO is incorrect.

---

[1] The standard for summary judgment is similar to that for JMOL. See Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150 (2000) (noting that the summary judgment standard mirrors the

7

JJCO's summary judgment motion was filed and decided without the benefit of all of the testimony and evidence presented at trial. To the extent JJCO argues that the summary judgment motion alone establishes that JJCO is entitled to judgment, that argument fails. This court held that JJCO was not entitled to summary judgment, as there was a factual dispute over whether JJCO's expenses constituted franchise fees. JJCO cannot now relitigate that issue by saying that the evidence in support of its summary judgment motion showed that there was no factual issue and that it was indeed entitled to judgment.

JJCO also argues that the evidence presented at trial supports its present motion and shows that it is entitled to judgment. If the evidence presented at trial, all of which was most certainly not provided in the summary judgment papers, showed that no factual dispute existed and that JJCO had paid franchise fees, then JJCO should have moved for JMOL at trial. A summary judgment motion is simply not the equivalent of a trial motion for JMOL. Accordingly, to the extent JJCO brings its motion pursuant to Rule 50(b), it is barred by JJCO's failure to file a Rule 50(a) motion for JMOL.

The court construes JJCO's present motion as a motion for a new trial under Rule 59(a), a motion to amend the judgment under Rule 59(e), and a motion seeking relief from judgment under

---

standard of judgment as a matter of law).

Rule 60(b)(6).  With respect to Rule 59(a), JJCO says that the verdict is contrary to the clear weight of the evidence.  With respect to Rule 59(e), JJCO argues that the court should amend the judgment as is "necessary to correct manifest errors of law or fact."  Reply at 4.  JJCO finally argues that it should be relieved from judgment for some "other reason" under Rule 60(b)(6).

   B.  JJCO Has Not Shown Entitlement to Relief Under Rule 59(a), Rule 59(e), or Rule 60(b)(6).

The court turns now to the merits of JJCO's motion.  JJCO argues that the evidence overwhelmingly shows that Isuzu violated the Hawaii Franchise Investment Law and that JJCO was required to pay a franchise fee.  In other words, JJCO says that the jury erred.  This court is not persuaded.

JJCO contends that Isuzu violated the Hawaii Franchise Investment Law by offering JJCO a Service Dealer Agreement after Isuzu decided to stop distributing cars in North America, and by refusing to renew the Isuzu Dealer Sales and Service Agreement.  JJCO says, "The clear weight of the evidence shows that the jury erroneously concluded that franchise fees were not paid and the two agreements were not franchise agreements."  Motion at 6.  This court first addresses the Isuzu Service Dealer Agreement, then analyzes arguments relating to the Isuzu Dealer Sales and Service Agreement.

     1.  JJCO Does Not Show Entitlement To Relief Based on Evidence That the Isuzu Service Dealer Agreement Was <u>a Franchise Agreement.</u>

  JJCO argues that the evidence overwhelmingly shows that the Isuzu Service Dealer Agreement, under which Isuzu offered to form a new business relationship with JJCO, constituted a franchise agreement. A franchise is defined as an "oral or written contract or agreement . . . in which a person grants to another person, a license to use a trade name, . . . and in which the franchise is required to pay, directly or indirectly, a franchise fee." Haw. Rev. Stat. § 482E-2. A "franchise fee" is a fee or charge for the right to enter into a business or to continue a business under a franchise agreement. <u>Id.</u> Isuzu offered its Isuzu Service Dealer Agreement to its dealers after it decided to discontinue selling vehicles in North America. JJCO did not accept this offer. As JJCO did not accept the offer, there was no "contract or agreement" giving rise to a franchise agreement.

  JJCO says that there is evidence that some dealers accepted this offer, and that Isuzu charged dealers the same service fees that Isuzu had charged dealers under previous contracts. Motion at 23. While that may be, JJCO fails to present any evidence in the record showing that the Isuzu Service Dealer Agreement constituted an agreement between the parties, much less that it was a franchise agreement.

10

            2.        JJCO Does Not Show Entitlement To Relief Based on Evidence That The Isuzu Dealer Sales and Service Agreement Was a Franchise Agreement.

The court turns now to JJCO's main argument--that the Isuzu Dealer Sales and Service Agreement constituted a franchise agreement that required JJCO to pay franchise fees, and that the jury erred in finding otherwise.

JJCO says that the following evidenced "franchise fees": (1) Isuzu required JJCO to provide and pay for signs, and submit monthly financial statements to Isuzu; (2) JJCO had to participate in Isuzu's advertising and promotional programs and was charged for such programs; (3) JJCO had to maintain flooring arrangements with an approved bank; (4) JJCO had to use the Isuzu communication system and was billed for the use of the communication system; and (5) Isuzu billed JJCO for training that JJCO was required to attend. The jury had sufficient evidence to support its finding that none of these constituted a franchise fee.

With respect to the first item (signs and financial statements) the Isuzu Dealer Sales and Service Agreement did state that JJCO had to install Isuzu signs and submit monthly financial statements. Ex. 48, attached to JJCO's Motion. However, the evidence showed that JJCO failed to comply with these requirements. The Dealership Standards Addendum, issued in

11

2000, explicitly stated that JJCO was not in compliance with those provisions.  Jackson, JJCO's owner, testified that the "signage never changed" for the duration of the business relationship, despite the stated violations.  Transcript of Proceedings at 144 (Docket No. 424) (Feb. 18, 2010).  Although deficient with respect to signs and monthly financial statements, JJCO continued to operate as Isuzu's dealer.  This suggests that those requirements were not franchise fees, as they were not required for the right to do business with Isuzu.

With respect to the second item (participating in and paying for advertising and promotional programs), the jury once again had a sound basis for finding no franchise fee.  There was evidence that JJCO reimbursed its employees for travel expenses when they attended training seminars on the mainland, but there was no evidence that the reimbursements covered advertising or promotional charges by Isuzu itself for the right to continue doing business with Isuzu.  With respect to advertising expenses, JJCO refers to evidence of newspaper advertisements in a Honolulu newspaper.  Payments to a third party, not to Isuzu, do not establish that the payments were franchise fees required to be paid for the right to continue to do business with Isuzu.

With respect to the third item (maintaining a flooring arrangement with a bank), JJCO points to no evidence of any payment to Isuzu itself.  In short, JJCO identifies no fee

12

relating to maintaining a flooring arrangement that could be characterized as a franchise fee.  JJCO was not restricted to any particular lender, and it ended up selecting a bank that had no special financial relationship with Isuzu.

With respect to the fourth item (the communication system) the jury had a basis for concluding that JJCO had not met its burden of establishing payment of a franchise fee.  There is admittedly evidence suggesting that JJCO may have been required to use the Isuzu communication system.  Russell Wong, JJCO's general manager, answered "yes" to the question, "Was Jackson required to use the computer communications system that was provided by Isuzu?"  Transcript of Proceedings at 32, (Feb. 19, 2010) (Docket No. 417); Ex. 3 at 32, attached to JJCO's Motion. The Isuzu Dealer Sales and Service Agreement Addendum stated that JJCO had to "[f]urnish to us, . . . via Isuzu Communication Systems, complete and accurate financial and operating statements."  Ex. 48, attached to JJCO's Motion.  Notwithstanding the contractual provision requiring JJCO to use the Isuzu communication system, JJCO did not always use the system.  Thus, for example, JJCO used a different system to transmit financial reports.  As Isuzu nevertheless continued to do business with JJCO, the jury had a basis for concluding that the use of the Isuzu communication system was not required for JJCO to continue its business.

Clearly, JJCO was making payments to Isuzu. What the jury determined was that JJCO did not show that these payments had to be made to continue the relationship with Isuzu. For example, JJCO was billed for the "Dealer Support System," which "includes transaction systems such as Isuzu Communication System." Ex. 145, attached to JJCO's Motion. But there was no evidence that, if JJCO had failed to pay this invoice, Isuzu would have stopped doing business with JJCO. The jury could have justifiably viewed testimony by Jackson, Wong, and Debbie Tesoro (Jackson's business partner) in the same way. These witnesses testified about periodic Isuzu bills Jackson received. See JJCO's Motion at 11-15. While JJCO saw the periodic bills as requiring payment, the jury was not compelled to conclude that the payment was required for the right to do business. A business may have many monthly bills, but failure to pay certain bills will not necessarily cause the business to cease. The jury had evidence from Isuzu's Maloney that Isuzu could have waived certain fees, for example. JJCO does not show entitlement to post-trial relief based on the Isuzu communication system or communication fees.

JJCO points to evidence that Volvo does not charge anything for the use of Volvo's computer system. Transcript of Proceedings at 23 (Docket No. 424) (Feb. 18, 2010). Volvo's failure to charge any communication fee does not render Isuzu's

communication charge necessarily a fee for the right to do business with Isuzu.

With respect to the fifth item (training fees), JJCO points to a $50 charge for Isuzu parts training in December 2001, and to monthly training charges. JJCO says that the "evidence clearly shows" that JJCO was forced to pay for training and that these payments constitute franchise fees. Reply at 11. However, Jackson testified that he did not know "how that $50 charge was calculated by Isuzu." Transcript of Proceedings at 2 (Docket No. 424) (Feb. 18, 2010). Jackson had before trial declared that the $50 charge was for "software to train parts personnel." Clarence E. Jackson Decl. ¶ 14 (Docket No. 29-2) (Apr. 21, 2009). The jury did not have to credit a mere vague assertion that a charge was for actual live training, as opposed to, for example, computer software that was akin to a textbook that JJCO personnel might have needed to refer to on a regular basis in the course of doing their jobs.

While the Dealer Sales and Service Agreement stated that "service management and technicians [must] attend all required Isuzu sponsored service training programs," that agreement did not state that Isuzu would bill JJCO for such training programs. Additionally, although JJCO says that JJCO paid for employees to attend training seminars on the mainland, JJCO does not show that Isuzu billed JJCO for travel and lodging.

If JJCO only reimbursed its employees for travel expenses when they attended training seminars, those payments, not having been received by Isuzu, cannot have been charged by Isuzu for the right to do business with Isuzu.

Finally, JJCO makes a general assertion that Isuzu fails to show "substantial evidence" supporting the jury's verdict. It is not Isuzu's burden to show that the verdict is supported by the evidence; it is JJCO's burden to show that the verdict is not supported by the evidence. JJCO fails to do that.

V.      CONCLUSION.

JJCO has not shown that the jury erred in concluding that JJCO failed to meet its burden of proving that any charge or expense was a franchise fee. Only fees that are conditions of doing business with the franchisor are franchise fees. This court denies JJCO's motion, as it has not shown any entitlement to the relief sought.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 22, 2010



    /s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

JJCO, Inc., v. Isuzu Motors America, Inc, et al., Civ. No. 08-419; ORDER DENYING PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT AND/OR TO ORDER A NEW TRIAL